1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Kimberly Peters,                    )    No. CV 03-02578-PHX-JAT
                                          )
10            Plaintiff,                  )    **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     Shamrock Foods Company;              )
13   U.S. Foodservice, Inc.,              )
                                          )
14            Defendants.                 )
                                          )
15   _____       )

16

17           Pending before the Court is Defendant Shamrock Foods Company's (Shamrock)

18   Motion For Summary Judgment (doc. #41). The Court now rules on the motion.

19   I.      BACKGROUND

20           The Plaintiff filed an administrative charge with the EEOC on January 23, 2002,

21   alleging that due to her gender she was passed over for several positions in favor of less

22   qualified male employees. Those positions are: (1) wholesale manager; (2) food services

23   sales manager; (3) external marketing manager; (4) sales manager, food services and retail;

24   and (5) sales manager, food services and retail.  The male employees allegedly promoted

25   over the Plaintiff are: (1) Joe Baca; (2) Matt Lewis; (3) Tim Kelly; (4) Stan Westphal; and

26   (5) Dave Cooper.

27           On April 11, 2002, the Plaintiff filed a supplement to the January 23, 2002 EEOC

28   Charge of Discrimination, adding an allegation that she was passed over for the position of

external marketing representative in favor of a less qualified male employee, Bob Bathey. The Plaintiff's Amendment to her EEOC Charge of Discrimination also clarified the dates the other allegedly discriminatory incidents took place.

Specifically, the Plaintiff alleges: (1) the position of external marketing *representative* was filled with a less qualified male employee in September of 2000; (2) the position of external marketing *manager* was filled with a less qualified male employee in November of 2001; (3) the position of wholesale manager was filled with a less qualified male employee in November of 2001; (4) the two sales manager, food services and retail positions were filled with less qualified male employees in November of 2001; and (5) the position of food services sales manager was filled with a less qualified male employee sometime in January of 2002.

On December 26, 2003, the Plaintiff filed a Complaint against the Defendants in the United States District Court of the District of Arizona. On December 12, 2004, the Plaintiff filed a First Amended Complaint alleging three counts: (1) gender discrimination and retaliation under Title VII; (2) violations of the Equal Pay Act, 29 U.S.C. § 206(d); and (3) blacklisting under Ariz. Rev. Stat. ("A.R.S.") § 23-1362.

On March 17, 2004, Defendant Shamrock filed a Motion to Dismiss and/or Motion for Partial Summary Judgment. In its motion, the Defendant sought to have this Court dismiss the Plaintiff's claims on the grounds that Counts One and Two of the Plaintiff's Complaint are not timely, and that Count Three is unsubstantiated. However, because the Defendant conceded in its Reply that Count One of the Complaint was timely, the Court only considered the motion as it applied to Counts Two and Three.

On June 18, 2004, the Court denied in part and granted in part Defendant Shamrock's Motion to Dismiss and/or Motion for Partial Summary Judgment. The Court denied the Motion to Dismiss and Motion for Summary Judgment with respect to Count One of the Plaintiff's Complaint (gender discrimination). It granted summary judgment in favor of Defendant Shamrock with respect to Counts Two and Three of the Plaintiff's Complaint

1   (equal pay violations and blacklisting).  Subsequently, on August 18, 2004, pursuant to

2   stipulation of the parties, this Court dismissed Defendant U.S. Foodservice, Inc.

3        On August 19, 2004, the Court sent out its Rule 16 Scheduling Order.  The scheduling

4   order states that each party is only allowed one motion for summary judgment.  On April 29,

5   2005, Defendant Shamrock, without leave of court, filed a second Motion for Summary

6   Judgment on the claims remaining in Count One of the Plaintiff's Complaint.

7   II.    LEGAL ANALYSIS AND DISCUSSION

8        As an initial matter, the Court notes that the Defendant does not attempt to re-litigate

9   issues raised in its prior Motion for Summary Judgment.  Additionally, the Plaintiff did not

10  object to the Defendant's filing of a second Motion for Summary Judgment.  Therefore, in

11  the interest of limiting the issues for trial, the Court will consider the Defendant's motion on

12  the merits.

13       The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of

14  Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no

15  genuine issues of material fact remain; and (2) after viewing the evidence most favorably to

16  the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R.

17  Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986);

18  *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The Court must

19  regard as true the non-moving party's evidence, if it is supported by affidavits or other

20  evidentiary material.  *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289.

21  However, the non-moving party may not merely rest on its pleadings, it must produce some

22  significant probative evidence tending to contradict the moving party's allegations and

23  thereby creating a material question of fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

24  256-57, 106 S.Ct. 2505, 2513-14 (1986) (holding that the plaintiff must present affirmative

25  evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*

26  *Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968).

27

28      A.    Retaliation and Constructive Discharge

1    Count One of the Plaintiff's First Amended Complaint alleges that the Defendant's
2    conduct "constitutes sexual discrimination and retaliation as prohibited by Title VII.  The
3    Defendant moves for summary judgment on the claim of retaliation on the grounds that: (1)
4    the claim has already been dismissed by this Court; and (2) the Plaintiff's Complaint does not
5    allege a claim of retaliation relating to the denial of benefits.  The Defendant also moves for
6    summary judgment on any gender discrimination claims based on an alleged constructive
7    discharge.  The Defendant argues that: (1) the Plaintiff did not file an EEOC charge alleging
8    constructive discharge; and (2) there is no evidence in this case amounting to a constructive
9    discharge.

10    The Plaintiff responds to the Defendant's Motion for Summary Judgment by stating:

11          The First Amended Complaint states a **single claim for relief** for violation of
             Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq., for
12          employment discrimination by sex, to wit, disparate treatment - **failure to
             promote**, in violation of 42 USC 2000e-2.
13

14    Response to Defendant's Motion For Summary Judgment p. 3 (emphasis added).    The

15    Plaintiff's Response makes no attempt to refute the Defendant's arguments as to why

16    judgment should be entered in favor of the Defendant with respect to the retaliation claim.

17    Similarly, the Plaintiff failed to address what facts in this case support a finding that the

18    Plaintiff's resignation on July 18, 2002, constitutes a constructive discharge.   In fact, the

19    Plaintiff does not even mention a retaliation claim or a claim of gender discrimination based

20    on constructive discharge anywhere in her Response to the Defendant's Motion for Summary

21    Judgment.

22    Because the Plaintiff's Response to the Defendant Motion for Summary Judgment

23    states that the Plaintiff only alleges a "single claim" of gender discrimination based on failure

24    to promote, and does not even attempt to argue the viability of any alleged retaliation or

25    constructive discharge claims, it is unclear to the Court whether the Plaintiff ever intended

26    to assert a claim of retaliation and/or constructive discharge, or whether the Plaintiff is now

27    voluntarily abandoning those claims.  Regardless, a party opposing summary judgment may

28    not merely rely on the allegations in its complaint, it must produce some significant probative

1   evidence tending to contradict the moving party's allegations and thereby creating a material

2   question of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505,

3   2513-14 (1986) (holding that the plaintiff must present affirmative evidence in order to defeat

4   a properly supported motion for summary judgment); *First Nat'l Bank v. Cities Serv. Co.,* 391

5   U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968). Because the Plaintiff has failed to come forward

6   with any facts or evidence that would indicate a material question of fact exists for trial,

7   summary judgment is granted in favor of the Defendant on the Plaintiff's claims of retaliation

8   and/or constructive discharge.

9       Based on the above ruling, the Court need not address the Defendant's remaining

10  arguments with respect to the claims of constructive discharge and retaliation.

11      B.      Discrimination based on gender

12      The remaining count in the Plaintiff's First Amended Complaint alleges that the

13  Defendant failed to promote her on three separate occasions because she is a woman. The

14  Defendant moves for summary judgment on this claim on the ground that: (1) the Plaintiff

15  did not timely file an EEOC charge with respect to one of the three positions; (2) the

16  positions sought by the were not promotions and do not otherwise constitute an "adverse

17  employment action" for purposes of Title VII; (3) the Plaintiff was not "rejected" for a

18  position; (4) assuming the positions do qualify as promotions, the Defendant had a legitimate

19  non-discriminatory reason for failing to put the Plaintiff in those positions; and (4) the

20  Plaintiff has not presented sufficient evidence of pretext to withstand summary judgment.

21      The Defendant argues that the Plaintiff failed to timely file an EEOC Charge of

22  discrimination alleging her claim of failure to promote with respect to the position of external

23  marketing manager. Specifically, the Defendant contends that the Plaintiff did not file a

24  charge alleging this claim until approximately 500 days after the alleged promotion took

25  place.

26      The statute of limitations for Title VII actions is 300 days prior to the filing of a state

27  administrative charge. 42 U.S.C. § 2000e-5(e)(1); *Hernandez v. Spacelabs Medical Inc.,*

28  343 F.3d 1107, 1115 -16 (9th Cir. 2003). The Plaintiff filed an administrative charge with

1   the EEOC on January 23, 2002.  Therefore, incidents occurring prior to March 29, 2001, are
2   time-barred by Title VII.

3         The Plaintiff filed an administrative charge with the EEOC on January 23, 2002,
4   alleging that, due to her gender, she was passed over for the position of external marketing
5   manager in favor of a less qualified male employee.  In an April 11, 2002, supplement to the
6   January 23, 2002, EEOC Charge of Discrimination, the Plaintiff alleges that the position of
7   *external marketing manager* was given to a male employee, Tim Kelly, sometime in
8   November of 2001.  This incident is within the statute of limitation period.  However, the
9   supplement also states that the Plaintiff was passed over for the position of external
10  marketing *representative*, and that this position was given to Bob Bathey in approximately
11  September of 2000.  This incident is outside the 300 day time limitation.  Therefore, the
12  Plaintiff cannot base her claim of failure to promote based on the external marketing
13  *representative* given to Bob Bathey in September of 2000.

14        Accordingly, the Court holds that the Plaintiff's failure to promote claim is limited to
15  the following incidents: (1) rejection of the Plaintiff for the position of *external marketing*
16  *manager*, in favor of a male employee, Tim Kelly, sometime in November of 2001; (2)
17  rejection of the Plaintiff for the position of *wholesale manager* in favor of a male employee,
18  Joe Baca, sometime in November of 2001; (3) rejection of the Plaintiff for the position of
19  *sales manager, food services and retail* in favor of a male employee, Stan Westphal
20  sometime in November of 2001; (4) rejection of the Plaintiff for the position of *sales*
21  *manager, food services and retail* in favor of a male employee, Dave Cooper, sometime in
22  November of 2001; and (5) rejection of the Plaintiff for the position of *food services sales*
23  *manager*, in favor of a male employee, Matt Lewis, sometime in January of 2002.

24        The Defendant contends that the Plaintiff has not shown an adverse employment
25  action with respect to the Plaintiff's allegations of lack of a desk and/or office work space,
26  and the Defendant's failure to provide her with a lap-top computer and to invite her to after
27  hours non-work related sporting events.  The Defendant also states that the Plaintiff has
28  failed to show that any of the allegations constitute a constructive discharge.  The Plaintiff's

1   Response to the Defendant's Motion for Summary Judgment makes it clear that the only

2   claim that she is proceeding on is one for disparate treatment based on failure to promote.

3          The Plaintiff's Response makes no argument that the failure to provide her with a lap-

4   top computer, the lack of a desk and/or office space, or the failure to invite her to sporting

5   events, or other of the acts alleged constitute an adverse employment action.  Similarly, she

6   does not argue that she was constructively discharged.  Accordingly, this Court will analyze

7   the Plaintiff's Complaint with respect to her single remaining claim, disparate treatment

8   relating to her alleged failure to promote.  While the other allegations of discriminatory

9   conduct in this case may be relevant to showing that the Defendant's actions were a pretext

10   to discrimination, because the Plaintiff's claim is not predicated on those acts, it is not

11   necessary that those acts in of themselves constitute "adverse employment actions."

12          The parties in this case disagree as to whether or not the positions at issue in this case

13   were, in fact, "promotions" upon which the Plaintiff can base her Title VII claim.  The

14   Defendant claims that it merely shuffled job responsibilities and argues that it did not create

15   any additional positions to which the Plaintiff could have applied or been rejected.  The

16   Defendant also argues that the jobs did not provide any additional salary increases or

17   incentives.  Therefore, the Defendant concludes, the alleged failure to place the Plaintiff in

18   any of these positions does not rise to the level of an adverse employment action.

19          The Ninth Circuit takes a fairly broad view of the phrase adverse employment action.

20   *Ray v.  Henderson,* 217 F.3d 1234, 1240-41 (9th Cir. 2000).   As a result, a wide array of

21   disadvantageous changes in the workplace constitute adverse employment actions.  *Id.* at

22   1240.  Not every employment decision amounts to an adverse employment action.  *Strother*

23   *v. Southern Ca. Permanente Medical Group,* 79 F.3d 859, 869 (9th Cir. 1996).  However,

24   a denial of a promotion clearly qualifies as an adverse employment action.  *See, e.g.,*

25   *Bergene,* 272 F.3d 1136, 1141 (9th Cir. 2001); *Brooks v. City of San Mateo,* 229 F.3d 917,

26   928 (9th Cir. 2000).

27          The Defendant, of course, denies that there is any evidence that the Plaintiff was

28   denied a "promotion" and states that the evidence indicates that at most, she would have been

1   deprived of a lateral move with no changes in salary, benefits or incentives.  The Defendant
2   presented deposition testimony that indicates that none of the male employees allegedly
3   promoted over the Plaintiff received raises.  However, the evidence also indicates that these
4   male employees; Stan Westphal (prior distribution and "pre-order sales" manager with
5   responsibility for supervising dairy drivers), David Cooper (prior manager of "pre-order
6   writers" and responsibility for managing convenience store sales), and Tim Kelly (prior "C
7   store sales manager"), were already in supervisory or managerial positions at the time they
8   were moved into their respective new positions.

9       The evidence indicates that the Plaintiff, by contrast, was in a "non-managerial sales
10  position," and sold dairy products at the time she applied for the managerial positions.  The
11  Plaintiff was not in the same position as the male employees who were ultimately hired.  And
12  the evidence does not support a finding that had the Plaintiff moved from a sales position to
13  a managerial position, it would have been considered a promotion, and she a would not have
14  received any increase in salary, benefits, or other tangible advantageous changes in her
15  employment.

16      In fact, Elliot Begoun testified in his deposition that Matt Lewis moved from his
17  former position in food sales to the position of food service sales *manager* because sales
18  positions necessarily involve a "rough quality of life."  According to Mr. Begoun, sales
19  associates "work all the time" and are "at the beck and call of [their] customers throughout
20  the weekend."  Mr. Begoun testified that the position of sales *manager* "affords . . . more
21  normalization" than a general sales position.  Additionally, although Matt Lewis apparently
22  took a decrease in pay to accept the position, Mr. Begoun refers to Matt Lewis' transition into
23  the sales manager position as a "promotion," and specifically states that "we try to promote
24  within whenever we can."

25      Even assuming that the Plaintiff would not have received any additional compensation
26  had she been promoted from a sales position to one of the managerial positions, this Court
27  finds that the Plaintiff's alleged denial of employment opportunities with better working
28  conditions and an increase in "status" and responsibility is sufficient to constitute an adverse

1  employment action for purposes of her failure to promote claim. *See, e.g., Little,* 301 F.3d

2  at 969 (defining adverse employment action and providing examples of adverse employment

3  actions); *Strother,* 79 F.3d at 869 (same).  The Plaintiff's allegations that she was passed over

4  and remained in a disadvantageous work environment is sufficient under the broad standard

5  of adverse employment action articulated by the Ninth Circuit. *See, Vasquez,* 349 F.3d at

6  645-46; *see e.g., Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268

7  (1998) (tangible employment action is "a significant change in employment status, such as

8  hiring, firing, failing to promote, reassignment with significantly different responsibilities,

9  or a decision causing a significant change in benefits").

10      Title VII makes it an unlawful employment practice for an employer to refuse to hire

11  an individual because of her sex. 42 U.S.C. § 2000e-2(a)(1).  In responding to a summary

12  judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or

13  circumstantial evidence demonstrating that a discriminatory reason more likely than not

14  motivated the defendant's decision, or alternatively may establish a prima facie case under

15  the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

16  93 S.Ct. 1817 (1973). *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1037 (9th

17  Cir. 2005).

18      The Plaintiff can make out a prima facie case of failure to promote, by showing that

19  (1) she belongs to a protected class; (2) she applied for and was qualified for the position she

20  was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the

21  position with an employee not of plaintiff's class, or continued to consider other applicants

22  whose qualifications were comparable to plaintiff's after rejecting plaintiff. *McDonnell*

23  *Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Dominguez-Curry,*  424 F.3d at 1037.

24      At the summary judgment stage, the degree of proof necessary to establish a prima

25  facie case is "minimal and does not even need to rise to the level of a preponderance of the

26  evidence." *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (internal quotations and

27  citations omitted);  *Chuang v. Univ. of Ca. Davis, Bd. of Trs.,* 225 F.3d 1115, 1124 (9th Cir.

28  2000).

1    Here, it is not in dispute that the Plaintiff: (1) is female; (2) sought employment

2    opportunities on the above mentioned occasions; and (3) all the positions were filled by male

3    individuals.    The Defendant disagrees that: (1) the employment opportunities were

4    "promotions; (2) the Plaintiff was qualified for the positions; and (3) the subsequently hired

5    male employees qualifications were similar or equivalent to the Plaintiff.

6    As noted above, the Plaintiff has presented sufficient evidence to show that the alleged

7    positions qualify as promotions or adverse employment actions for purposes of withstanding

8    summary judgment. Additionally, the depositions and affidavits presented by both the

9    Defendant and the Plaintiff acknowledge the Plaintiff's desire and attempts to move up into

10   a managerial position. There is significant discussion and conflicting evidence regarding the

11   Plaintiff's qualifications for a managerial position in general, as well as the qualifications of

12   the male employees that were actually hired.   *See, e.g., Aragon v. Republic Silver State*

13   *Disposal, Inc.,* 292 F.3d 654, 659-60 (9th Cir. 2002) (emphasizing the low threshold for a

14   *prima facie* case and holding that even an employee's self-assessment is relevant evidence).

15   Accordingly, the Court finds that the Plaintiff has met her initial burden of establishing a

16   question of fact for trial with respect to her *prima facie* case. *See, e.g., Wallis v. J.R. Simplot*

17   *Co.,* 26 F.3d 885, 889 (9th Cir. 1994) (the amount of evidence that must be produced in order

18   to create a *prima facie* case is "very little.").

19   Once a plaintiff has made a prima facie showing of discrimination, the burden shifts

20   to the defendant to produce evidence that it had a legitimate, non-discriminatory reason for

21   its actions.  *Bradley v. Harcourt, Brace, and Co.,* 104 F.3d 267, 270 (9th Cir. 1996)  To

22   accomplish this, the employer must clearly set forth, through the introduction of admissible

23   evidence, the reasons for the plaintiff's rejection.  *Lyons,* 307 F.3d at 1112.  If the employer

24   meets this burden, the presumption of unlawful discrimination "simply drops out of the

25   picture," and the burden shifts back to the employee. *St. Mary's Honor Ctr. v. Hicks,* 509

26   U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993).

27   Here, the Defendant has presented evidence that it had legitimate nondiscriminatory

28   reasons for its actions, namely that the Plaintiff was less qualified for the positions than the

male employees the Defendant ultimately hired.   In support of its argument the Defendant provides evidence that all of the employees placed in the available positions had prior management or supervisory experience, while the Plaintiff did not.

Additionally, the Defendant provides evidence that the Plaintiff received several reviews which suggested that the Plaintiff lacked the necessary leadership skills to be promoted to a management position.   Specifically, the Plaintiff's March 17, 2000, performance appraisal indicated that the Plaintiff needed to work on her interpersonal skills. The evaluation indicates that some of the qualities that made the Plaintiff a good sales person, hinders her ability to "relate to others interpersonally," and the Plaintiff's March 27, 2001, performance appraisal indicates deficiencies in the Plaintiff's leadership skills.

The Plaintiff's supervisor, Elliot Begoun, avowed in his affidavit and testified in his deposition that the Plaintiff had a tendency to become difficult to work with when problems or challenges arose.  He stated that the Plaintiff's aggressive and passionate work habits made her a great sales person, but made it a challenge for her to interrelate with her coworkers and be a consensus builder or a team builder.  He stated that there were instances when the Plaintiff "stepped on some toes," and that he could recall numerous employees that had "issues" or "run-ins" with the Plaintiff. He commented that the Plaintiff did not handle constructive criticism well, and that she sometimes reacted inappropriately to challenges. He indicated that when problems arose, the Plaintiff had a tendency to focus on the cause of problem rather than finding a solution.  He felt that while identifying a problem is a sign of awareness, solving problems is a leadership skill that managers need.  He felt that the Plaintiff lacked this skill, and that she needed to work on this skill, as well as her ability to relate to people interpersonally, before she would be suitable for a management position.

The evidence presented by both the Defendant and the Plaintiff suggests that the Defendant had legitimate nondiscriminatory reason for passing over the Plaintiff for the managerial positions at issue in this case, namely, that the Plaintiff's lack of interpersonal and leadership skills rendered her unsuitability for the available positions.   Therefore, the Plaintiff must now produce sufficient evidence to raise a genuine issue of material fact as to

1    whether the Defendant's proffered nondiscriminatory reason is merely a pretext for

2    discrimination. *Dominguez-Curry,* 424 F.3d at 1037; *Coleman v. Quaker Oats Co.,* 232 F.3d

3    1271, 1282 (9th Cir. 2000).

4          The Plaintiff can show pretext either: (1) by providing direct evidence of

5    discrimination showing that unlawful discrimination more likely than not motivated the

6    employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy

7    of credence because it is inconsistent or otherwise not believable. *Dominguez-Curry,* 424

8    F.3d at 1037;  *Lyons,* 307 F.3d at 1113; *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217,

9    1220-22 (9th Cir. 1998).

10         Direct evidence is evidence which, if believed, proves the fact of discriminatory

11   animus "without inference or presumption." *Coghlan v. American Seafoods Co. L.L.C.,* 413

12   F.3d 1090, 1095 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221

13   (9th Cir.1998) (internal quotation and citation omitted)).  Direct evidence of employment

14   discrimination is rare. *Aragon v. Republic Silver State Disposal Inc.,* 292 F.3d 654, 662 (9th

15   Cir. 2002).  This type of evidence consists of openly sexist, racist, or similarly discriminatory

16   statements or actions by the employer. *Coghlan,* 413 F.3d at 1095.

17         Circumstantial evidence, by contrast, requires an additional inferential step to

18   demonstrate discrimination. *Id.*  The distinction between direct and circumstantial evidence

19   is crucial, because it controls the amount of evidence that the Plaintiff must present in order

20   to establish a pretext for discrimination. *Id.*  Because direct evidence is so probative, a

21   plaintiff need offer "very little" direct evidence to raise a genuine issue of material fact.

22   *Godwin,* 150 F.3d at 1221. But when a plaintiff relies on circumstantial evidence, that

23   evidence must be "specific and substantial" to defeat the employer's motion for summary

24   judgment. *Coghlan,* 413 F.3d at 1095.

25         Despite the Plaintiff's contention, the Defendant's statement to the Plaintiff that she

26   did not get a particular promotion because the job required traveling and the Plaintiff is a

27   "mom," is not direct evidence of discrimination.  Presuming the statement to be true, there

28   is at most an inference that, as a "mom," the Plaintiff would be unable to travel because she

1  has children.  This inference could apply equally to male or female employees who are
2  parents and does not directly show animosity for the Plaintiff's gender or an intent to
3  discriminate based on gender.

4      The Plaintiff may still rely on circumstantial evidence to show pretext but must
5  provide specific and substantial evidence.  *Lyons,* 307 F.3d at 1113.  The Plaintiff can meet
6  this burden of proof in two ways.  First, the Plaintiff can make an affirmative case that the
7  employer is biased.   *Coghlan,* 413 F.3d at 1095.  For example, statistical evidence is
8  circumstantial evidence that could, if sufficiently probative, point to bias. *Id.*; *Aragon, 292
9  F.3d at 663*.  Second, the Plaintiff can provide evidence showing that the employer's
10 proffered explanation for the adverse action is "unworthy of credence" and not to be
11 believed.  *Coghlan,* 413 F.3d at 1095.

12     Here, the Plaintiff points to the EEOC's Reasonable Cause Finding as evidence of
13 pretext.  Specifically, the Plaintiff argues that the statistical evidence relied upon by the
14 EEOC shows that the Defendant had a pattern or practice of failing to promote female
15 employees.  The EEOC determination states that "analysis of [the Defendant's] workforce
16 data indicates a statistically significant shortfall in females in management position as
17 compared to other employees in  [the Defendant's] industry in the Phoenix metropolitan
18 area."  The workforce data relied upon by the EEOC indicated that in 2001, only 13.6 percent
19 of the Defendant's 169 managers were female.

20     The Defendant argues that the statistical evidence relied upon by the EEOC report is
21 "meaningless" because it does not account for other variables besides gender.  The Defendant
22 points out that while the EEOC statistics show that only 13 percent of female employees are
23 in managerial positions, 73.9 percent of the Defendant's female employees were employed
24 in "professional" positions.

25     A plaintiff may introduce the EEOC's finding of reasonable cause into evidence.
26 *Gifford v. Atchison, Topeka and Santa Fe Railway*, 685 F.2d 1149, 1156, n.4 (9th Cir. 1982).
27 An EEOC determination can, in some cases, create an issue of fact sufficient to warrant
28 proceedings beyond summary judgment.  *Id.* at 1156.  However, although statistics are often

1  probative in determining the existence of a pattern or practice of disparate treatment, their

2  usefulness in proving pretext depends upon their relevance to the specific decision or

3  decisions affecting the individual plaintiff, and not those that affect plaintiff's protected class

4  in general.  *Penk v. Oregon State Bd. of Higher Educ.,* 816 F.2d 458, 462-63 (9th Cir. 1987).

5          The Court agrees with the Defendant that the statistics relied upon by the EEOC and

6  the Plaintiff are flawed in that they fail to discuss variables that might provide a non-

7  discriminatory reason for the statistical data.  For example, the statistics relied upon by the

8  EEOC reflect that only 19.9 percent of the Defendant's 1,534 employees in 2001 were

9  women.  It seems fairly obvious to this Court that there would be some relationship between

10  the low number of women employed by the Defendant, and the low number of women in

11  management positions. Yet the EEOC report does not discuss this variable. It seems to the

12  Court that all that the Plaintiff has shown is that in general the Defendant has a

13  disproportionate number of men in its work force.

14          The statistical evidence relied upon by the EEOC, and the Plaintiff, is too broad to

15  provide independent evidence of pretext. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1284

16  (9th Cir. 2000).  While the statistics show that only 13 percent of female employees are in

17  managerial positions, this does not take into account any variables that might explain the

18  variation, such as education level, prior work experience with the Defendant, and the overall

19  percentage of women as compared to men in the relevant data pool.  The Plaintiff has failed

20  to provide any additional evidence, including comparative or statistical evidence, that would

21  allow this Court to fairly draw an inference of pretext.

22          The Court has taken into consideration all of the evidence presented by the Plaintiff.

23  While the evidence is sufficient to support a prima facie case of discrimination, it is not

24  specific or substantial enough to overcome the Defendant's evidence of a legitimate non-

25  discriminatory reason for its actions and establish a pretext of discrimination.

26          Accordingly,

27          IT IS ORDERED GRANTING the Defendant's Motion for Summary Judgment (doc.

28  #41).

1      IT IS FURTHER ORDERED the Clerk of the Court shall enter Judgment in favor of

2   Defendant Shamrock Foods Company and terminate this case.

3      DATED this 17th day of January, 2006.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22   _____

23                James A. Teilborg
               United States District Judge

24

25

26

27

28